UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| ARDEN PAWNEELEGGINS,<br><br>Plaintiff,<br><br>vs.<br><br>JARED, KITCHEN BOSS AT THE MIKE DURFEE STATE PRISON; IN HIS INDIVIDUAL AND OFFICIAL CAPACITY<br><br>Defendant. | 4:19-CV-04033-RAL<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING |

Plaintiff, Arden Pawneeleggins, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Doc. 1. Pawneeleggins alleges violations of the Eighth Amendment and the Americans with Disabilities Act (ADA). *Id.* at 4, 7. He filed a motion to proceed in forma pauperis and his prisoner trust account. Docs. 2, 3. Originally, this court assessed Pawneeleggins a filing fee after granting him leave to proceed in forma pauperis. Doc. 5. Pawneeleggins did not pay the filing fee and this court entered judgment against him. Doc. 14. The judgment was appealed and reversed by the Eighth Circuit Court of Appeals. Docs. 22, 23, 24. The Eighth Circuit found that this court abused its discretion when it assessed a filing fee to Pawneeleggins and dismissed the case for failure to pay. *Id.* This court now re-assesses Pawneeleggins's motion to proceed in forma pauperis and conducts a 1915A screening of his complaint.

I.  **Motion to Proceed In Forma Pauperis**

Pawneeleggins filed a motion to proceed in forma pauperis, Doc. 2, and a prisoner trust account report, Doc. 3, showing that he presently has a balance of *negative* $2.12. Doc. 3. His average monthly deposits for the past sixth months were $30.88 and his balance for the past six

1

months was *negative* $4.30. *Id.* Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). " 'When an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceedings or over a period of time under an installment plan.' " *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

(A) the average monthly deposits to the prisoner's account; or
(B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Based on the information regarding Pawneeleggins's prisoner trust account, the court grants Pawneeleggins leave to proceed in forma pauperis and waives the initial partial filing fee. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

In order to pay his filing fee, Pawneeleggins must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Pawneeleggins's institution. Pawneeleggins remains responsible for the entire filing fee, as long as he is a prisoner. *See In re Tyler*, 110 F.3d 528, 529-30 (8th Cir. 1997).

## II. Allegations of Pawneeleggins's Complaint

Pawneeleggins claims that he began his job in the Mike Durfee State Prison kitchen around December of 2018. Doc. 1 at 4. On December 11, 2018, he allegedly saw a therapist who looked at his swollen hand and wrote him a "no work order[.]" *Id.* He claims that the kitchen boss, Jared, was aware of his swollen hand and the "no work order" by email. *Id.*

Pawneeleggins claims that even after being notified of the "no work order" he was consistently called down and asked why he wasn't at work. *Id.* On December 20, 2018, Pawneeleggins claims Officer Kauth[1] told him to go to work. *Id.* When Pawneeleggins showed up for work, a "red headed lady" said that they did not have a "no work order" on file. *Id.* Pawneeleggins refutes this claim and asserts that health services confirmed that he had a "no work order." *Id.* at 5; Doc. 1-1 at 4. On November 30, 2018, Pawneeleggins claims he was called to the office and told his "no work order" was from 2013 and he must go to work. Doc. 1 at 5. Pawneeleggins claims that he was threatened with a write up if he didn't go to work. *Id.* He asserts that write ups have a negative impact when an inmate comes up for parole. *Id.* Further, Pawneeleggins claims he has had two "no work orders," one from 2013 and the other from 2018. *Id.*; Doc. 1-1 at 4.

Pawneeleggins claims that the defendant was deliberately indifferent and failed to protect him. *Id.* at 4, 6. Further, he alleges a violation of the ADA. *Id.* at 7. He asserts that the

---

[1] Pawneeleggins did not list Officer Kauth as a defendant, thus this screening does not address the possible claims against Officer Kauth.

3

defendant's behavior has injured him physically, mentally, emotionally, and spiritually. *Id.* at 5, 6. Pawneeleggins asks to be reimbursed for his medical expenses from his past and future claims and to receive $1 million for punitive damages, $500,000 for compensatory damages, and $200,000 for pain and suffering. *Id.* at 8. Further, Pawneeleggins asks the court to award $150,000 for emotional distress and mental anguish. *Id.* He claims that he has exhausted all administrative remedies. *Id.* at 6, 7.

## III. Screening and Dismissal Standards

The court must assume as true all facts well pleaded in the complaint. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If it does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555; *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (noting that a complaint must contain either direct or inferential allegations regarding all

4

material elements necessary to sustain recovery under some viable legal theory). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they are "(1) frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court will now assess each individual claim under 28 U.S.C. § 1915A.

### A.   Official Capacity Claims

Pawneeleggins has sued Jared, the kitchen boss, in his individual and official capacity. Doc. 1 at 2. As the Supreme Court has stated, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.* But when an official capacity claim is asserted for injunctive relief against a state officer, the defense of qualified immunity does not apply. *See Pearson v. Callahan*, 555 U.S. 223, 242-43 (2009).

Here, Pawneeleggins seeks to recover money damages. Doc. 1 at 8. Consequently, because Pawneeleggins has sued the defendant in his official capacity, Pawneeleggins has asserted a claim for money damages against the state of South Dakota. The state of South Dakota has not waived its sovereign immunity. Thus, to the extent Pawneeleggins seeks to hold the defendant liable in his official capacity for money damages, this Court finds that the defendant is protected by sovereign immunity on the official capacity claim.

### B. Cruel and Unusual Punishment from Compelled Labor

The Eighth Circuit has noted that the Eighth Amendment's cruel and unusual punishment "encompasses (1) deliberate indifference to serious medical needs, and (2) compelled labor[.]" *Madewell v. Roberts*, 909 F.2d 1203, 1207 (8th Cir. 1990) (citing *East v. Lemons*, 768 F.2d 1000, 1001 (8th Cir. 1985)). The plaintiff must show that the prison official knowingly compelled the prisoner to perform labor "beyond an inmate's physical capacity, that is, labor which is (a) beyond the inmate's strength, (b) dangerous to his or her life or health, (c) unduly painful." *Id.*

The Eighth Circuit has reversed district courts for dismissing compelled labor claims too early. In *Madewell*, the Eighth Circuit reasoned that "certain aspects of work conditions might result in the 'unnecessary and wanton infliction of pain[.]'" *Id.*; (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The inmate in *Madewell* alleged that his serious arthritis was aggravated by sitting on cold concrete in an unheated workplace and not being allowed to wear a coat. *Id.* The Eighth Circuit reversed and remanded the district court's grant of summary judgment. *Id.* In *Franklin v. Lockhart*, the Eighth Circuit reversed a district court's dismissal of a complaint alleging that an inmate's work on the "prison hoe squad" requiring him to handle manure and dead animals was beyond his physical capacity and unconstitutional under the Eighth Amendment. 890 F.2d 96, 97 (8th Cir. 1989). Likewise, in *Ray v. Mabry*, the inmate claimed he had a physical disability and was required to perform duties beyond his physical capabilities when he was on the garage squad. 556 F.2d 881, 882 (8th Cir. 1977). The Eighth Circuit reversed and remanded dismissal of the Eighth Amendment claim. *Id.* Similarly, in *Sanchez v. Taggart*, there were enough facts alleged to support an Eighth Amendment claim when the

inmate was ordered to do sandbagging work after he reported his previous back injury and had documentation showing he was on a "light-duty status[.]" 144 F.3d 1154, 1156 (8th Cir. 1998).

Here, Pawneeleggins alleges that he had a "no work order" for his right hand. Doc. 1 at 4. He claims that the defendant was aware of his "no work order" and yet still compelled Pawneeleggins to work in the kitchen. *Id.* Pawneeleggins has alleged enough facts to claim that this work was beyond his physical capacity. Further, his factual allegations and claims are similar to those discussed above in *Madewell, Franklin, Ray*, and *Sanchez*. At this point, Pawneeleggins' claim of compelled labor constituting cruel and unusual punishment survives 1915A screening.

### C. Failure to Protect Claim

Pawneeleggins raised a failure to protect claim against the defendant. Doc. 1 at 6. To prevail on an Eighth Amendment failure to protect an inmate from cruel and unusual punishment claim, "a plaintiff must show that a defendant was *personally involved* in the alleged deprivation of rights and *deliberately interfered* with those rights." *Kenyon v. Dooley*, 2014 WL 3700878, at *3 (D.S.D. July 25, 2014) (citing *DuBois v. Dooley*, 277 F. App'x 651, 652 (8th Cir. 2008). To establish deliberate interference, a plaintiff " 'must show both an objective element, that the deprivation was sufficiently serious, and a subjective element, that the defendant acted with a sufficiently culpable state of mind.' " *Kenyon*, 2014 WL 3700878, at *3 (quoting *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir.1997) (citations omitted)).

If a prison official has knowledge of the risk and fails to act it can amount to deliberate indifference. *See Coleman*, 114 F.3d at 786; *Farmer v. Brennan*, 511 U.S. 842, 847 (1994). To show deliberate indifference, an inmate must demonstrate that a prison official knew the "inmate face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable

7

measures to abate it." *Id.* (citing *Farmer*, 511 U.S. at 847). Prison officials are deliberately indifferent when they "knowingly ... compel convicts to perform physical labor" beyond their physical capacity or cause undue pain. *Choate v. Lockhart,* 7 F.3d 1370, 1374 (1993) (citing *Ray* 556 F.2d at 882). Mere negligence does not constitute deliberate indifference. *Warren v. Missouri,* 995 F.2d 130, 131 (8th Cir.1993).

Here, Pawneeleggins asserts that the defendant failed to protect him when the defendant knew about the "no work order" and still asked him to work. Doc. 1 at 6. He claims that the defendant had access to all of the emails that dealt with his "no work orders[.]" *Id.* Pawneeleggins asserts that he was injured due to the defendant's failure to protect him and claims he is "physically drained by this" and that he is "[m]entally unstable[.]" *Id.* At this point, Pawneeleggins's has asserted enough facts for his failure to protect claim against the defendant to survive 1915A screening.

### D. Americans with Disabilities Act Claim

Pawneeleggins raises a claim under the ADA. "The ADA consists of three titles addressing discrimination against the disabled in different contexts." *Gorman v. Bartch,* 152 F.3d 907, 911 (8th Cir. 1998). "Title I prohibits employment discrimination, Title II prohibits discrimination in the services of public entities, and Title III prohibits discrimination by public accommodations involved in interstate commerce such as hotels, restaurants, and privately operated transportation services[.]" *Id.* (citing 42 U.S.C. §§ 12112, 12132, 12182, 12184).

Inmates are not deemed employees for the purposes of Title I of the ADA. *See Battle v. Minn. Dept. of Corr.,* 40 Fed. Appx. 308 (8th Cir. 2002); *Murdock v. Washington,* 193 F.3d 510 (7th Cir. 1999) (prison job programs do not constitute employment under Title I).

8

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 886 (8th Cir. 2009). In order to sufficiently allege that defendants violated Title II of the ADA, Pawneeleggins must allege:

> (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the [prison's] services, programs, or activities, or was otherwise subjected to discrimination by the [prison]; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability.

*Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010).

Pawneeleggins claims he is a qualified individual with a disability and that his disability is known by the defendant. Doc. 1 at 7. He alleges that the defendant discriminated against him when he required him to work in the kitchen knowing he had a "no work order[.]" Pawneeleggins does not claim that the alleged discrimination was "by reason of his disability" required by *Baribeau*. Because Pawneeleggins did not assert facts that show the alleged discriminatory action was because he was an individual with a disability, his Title II ADA claim is dismissed under 28 U.S.C. §§ 1915(e)(B)(2)(i-ii) and 1915A(b)(1).

I. **Order**

Accordingly, it is

ORDERED that, that Pawneeleggins' motion to proceed in forma pauperis, Doc. 2, is granted and his initial filing fee is waived. It is further

ORDERED that the institution having custody of Pawneeleggins is directed that whenever the amount in Pawneeleggins' trust account, exclusive of funds available to him in his

9

frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to the Pawneeleggins' trust account shall be forwarded to the U.S. District Court Clerk's Office under to 28 U.S.C. § 1915(b)(1), until the $350 filing fee is paid in full. It is further

ORDERED that Pawneeleggins' claims against the defendant in his official capacity are dismissed under 28 U.S.C. § 1915(e)(2)(B)(i). It is further

ORDERED that pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1), Pawneeleggins' Title II ADA claim is dismissed. It is further

ORDERED that Pawneeleggins' compelled labor and failure to protect claims under the Eighth Amendment against the defendant in his individual capacity survive screening. It is further

ORDERED that the Clerk of Court shall send blank summons forms and Marshal Service Form (Form USM-285) to Pawneeleggins so that he may cause the complaint to be served upon defendants. It is further

ORDERED Pawneeleggins shall complete and send the Clerk of Courts a separate summons and USM-285 form for each defendant. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed. It is further

ORDERED that the United States Marshal Service shall serve the completed summons, together with a copy of the complaint, Doc. 1, and this order, upon the defendant. It is further

ORDERED that the defendant will serve and file an answer or responsive pleading to the amended complaints and supplement on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3). It is further

ORDERED that the Clerk of Court is directed to send a copy of this order to the appropriate official at Pawneeleggins' institution. It is finally

ORDERED that Pawneeleggins keep this Court informed of his current address at all times. All parties in litigating this case are bound by the Federal Rules of Civil Procedure and by this Court's Civil Local Rules.

DATED this 5th day of December, 2019.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE